UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUADALUPE LOMELI NAVARRO,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No. 1:21-cv-01379-EPG<br><br>FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(ECF Nos. 1, 15). |

This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding her application for supplemental security income benefits. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF No. 9).

Plaintiff presents the following issues:

1. The ALJ's RFC is unsupported by substantial evidence because the ALJ erred in failing to find Plaintiff's borderline intellectual functioning, headaches and diabetes severe.

2. The ALJ erred in rejecting the opinion of LPC Gordon without adequately addressing the factors of supportability and consistency.

(ECF No. 15, p. 8).

Having reviewed the record, administrative transcript, the briefs of the parties, and the applicable law, the Court finds as follows:

## I. ANALYSIS

### A. RFC

Plaintiff first challenges the following RFC assessed by the ALJ:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can perform simple routine, repetitive work and she can occasionally interact with coworkers and the public. She cannot perform fast-paced assembly line work. She can meet production requirements that allow her to sustain a flexible and goal oriented pace. The claimant can sustain concentration and persistence for periods of two hours at a time.

(A.R. 124).

Specifically, Plaintiff argues that "the RFC is not supported by substantial evidence because the ALJ failed to find Plaintiff's borderline intellectual functioning, headaches, and diabetes severe." (ECF No. 15, p. 9). Noting that only a de minimis screening is used to evaluate the severity of impairments under Step Two, Plaintiff argues that the ALJ's opinion "cherry-picks the evidence" and "ignores probative evidence" in determining which of Plaintiff's impairments are severe. (*Id.* at 10); *see Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) ("[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims.").

A claimant's RFC is "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, *inter alia*, medical records, lay evidence, and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (internal quotation marks and citations omitted).

In reviewing findings of fact with respect to RFC assessments, this Court determines whether the decision is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial

evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (internal citation omitted).

As an initial matter, in assessing RFC, an ALJ considers both severe and non-severe impairments. 20 C.F.R. § 416.945(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 416.920(c), 416.921, and 416.923, when we assess your residual functional capacity."). As the Ninth Circuit noted in rejecting an argument similar to Plaintiff's:

> Step two is merely a threshold determination meant to screen out weak claims. *Bowen v. Yuckert*, 482 U.S. 137, 146–47, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). It is not meant to identify the impairments that should be taken into account when determining the RFC. In fact, "[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996). The RFC therefore should be exactly the same regardless of whether certain impairments are considered "severe" or not.

*Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017).

Thus, even if the ALJ failed to properly find some of Plaintiff's impairments severe at Step Two, that does not necessarily render the RFC unsupported by substantial evidence. *See Herrera v. Comm'r of Soc. Sec.*, No. 1:20-CV-01026-SAB, 2022 WL 1165830, at *6 (E.D. Cal. Apr. 20, 2022), *report and recommendation adopted*, 2022 WL 3969544 (E.D. Cal. Aug. 31, 2022) ("Even if an ALJ errs by failing to include an impairment as severe at step two, when an ALJ nonetheless considers limitations resulting from the impairment in formulating the RFC, any error in not considering the impairment to be severe is harmless.").

Thus, because the ALJ found that Plaintiff had some severe impairments at Step Two— major depressive disorder with psychotic symptoms and anxiety—and proceeded to examine the remaining Steps of the disability determination, any error at Step Two was harmless. *Id.* at 1049 ("Moreover, step two was decided in Buck's favor after both hearings. He could not possibly have been prejudiced. Any alleged error is therefore harmless and cannot be the basis for a

remand."); *Emsley v. Kijakazi*, No. 22-35053, 2022 WL 17039000, at *1 (9th Cir. Nov. 17, 2022) ("Emsley argues that the ALJ erred by failing to credit his 'rheumatoid arthritis' and 'degenerative disc disease/sciatica' as severe impairments at Step Two. Any error at Step Two is harmless because, those disputed impairments aside, the ALJ found other impairments to be severe and proceeded to Step Three.").

To the extent that Plaintiff argues—severity aside—that the ALJ failed to properly incorporate limitations from all of Plaintiff's impairments into the RFC, this argument also fails. The ALJ conducted a thorough review of the medical records, medical opinions, and Plaintiff's subjective complaints in considering all of her alleged impairments.

Pertinent here, as to Plaintiff's intellectual limitations the ALJ noted that her "ability to understand, remember, and carry out work-related tasks in a persistent manner on a sustained basis" would cause "some limitations in understanding as evidenced by her low IQ of 63 and her history of special education (Ex. 1F/34, B13F/20)." (A.R. 125). But "there [was] a paucity of objective findings in the record indicative of ongoing memory and concentration deficits." (A.R. 125). Importantly, Plaintiff daily activities—such as preparing meals, shopping in stores, and taking public transportation—indicated she was "capable of performing simple routine repetitive work but not assembly line work, for two hour periods, with production requirements allowing her to sustain a flexible and goal-oriented pace." (AR 125).

As to Plaintiff's complaints of headaches, the ALJ concluded that "the frequency and severity of her alleged headaches, are generally inconsistent with the evidence regarding her physical functioning." (AR 126). And "her headaches have not required specialized treatment." (A.R. 126). Thus, no additional limitations were warranted. (A.R. 126). Elsewhere, the ALJ noted that "[p]rior to September 2020, the claimant had not reported headaches since October 2019" and "[n]o evidence was submitted to establish ongoing frequency and severity of headaches to the extent alleged" and "did not require emergency treatment or hospitalization for headaches within the period at issue." (A.R. 122).

As to Plaintiff's diabetes, the ALJ noted this condition but observed that Plaintiff monitored her blood glucose and controlled her condition with medications, did not take insulin,

and did not require emergency treatment or hospitalization. (A.R. 121-22, 126). Thus, the ALJ determined that Plaintiff's allegations about her symptoms were "unsupportive of additional limitations" in the RFC. (A.R. 126).

The Court concludes that the above evidence offered for not including additional limitations in the RFC based on Plaintiff's intellectual limitations, headaches, and diabetes is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. While Plaintiff argues that the record could support a different conclusion as to the evidence, this at most amounts to another "rational interpretation," meaning that "the decision of the ALJ must be upheld. *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995). Moreover, Plaintiff fails to show that the evidence warranted even further limitations than the ALJ assessed. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 n.2 (9th Cir. 2009) (rejecting challenge to RFC determination where the claimant did "not detail what other physical limitations follow from the evidence of his knee and should injuries, besides the limitations already listed in the RFC").

### B.     LPC Gordon

Plaintiff next argues that the ALJ erred in rejecting the opinions of LPC Gordon without adequately addressing the supportability and consistency factors. (ECF No. 15, p. 13). Specifically, Plaintiff asserts there was not a "logical bridge" between the ALJ's cited evidence and the conclusion to discount LPC Gordon's opinion. (*Id.* at 14).

Because Plaintiff applied for benefits in May 2020, certain regulations concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017, govern this case. 20 C.F.R. §§ 404.1520c, 416.920c. (AR 118). These regulations set "supportability" and "consistency" as "the most important factors" when determining an opinion's persuasiveness. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). And although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assignment of specific "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." 20 C.F.R. §§ 404.1520c(a)-(b); 416.920c(a)-(b).

As for the case authority preceding the new regulations that required an ALJ to provide clear and convincing or specific and legitimate reasons for rejecting certain medical opinions, the Ninth Circuit has concluded that it does not apply to claims governed by the new regulations:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant. *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . ., including those from your medical sources."). Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, *see Murray*, 722 F.2d at 501–02, is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). Accordingly, under the new regulations, "the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* at 787.

In conjunction with this requirement, "[t]he agency must 'articulate . . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, 20 C.F.R. § 404.1520c(b), and 'explain how [it] considered the supportability and consistency factors' in reaching these findings, *id.* § 404.1520c(b)(2)." *Woods*, 32 F.4th at 792.

> Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence. *Id.* § 404.1520c(c)(1). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim. *Id.* § 404.1520c(c)(2).

*Id.* at 791-92.

With these standards in mind, the Court now considers the ALJ's reasons to deem LPC Gordon's opinion "unpersuasive":

> The claimant's provider Jacqueline Gordon, LPC opined in December 2019 that the claimant's symptoms have impaired her emotional, cognitive, occupational, and social functioning resulting in her inability to obtain and maintain employment due to difficulty concentrating, focusing, staying on task, disconnect from family members due to ongoing conflict, thought of self-harm due to inability to regulate her emotions (Ex. B8F/11, B9F/23). This opinion is supported by a treatment relationship with the claimant, but pertains to the claimant's functioning prior to

> the period at issue, and is not entirely consistent with treatment notes subsequent to the application date showing improvement with medication, no hallucinations, and ability to shop in stores and use public transportation (Ex. B5E, B8F/23, B9F/35, B10F/16, B12F/4, B13F/49, B14F/5, 9, 11, 13; hearing testimony). The undersigned finds this opinion unpersuasive.

(A.R. 127).

The ALJ first noted that LPC Gordon's treatment relationship with Plaintiff was supportive of the opinion.[1] However, as to consistency, the ALJ reasonably concluded that other evidence undermined the opinion. Specifically, LPC Gordon's review related to functioning prior to the disability period at issue and was not entirely consistent with later record evidence. *See Alvarez v. Comm'r of Soc. Sec.*, No. 1:20-CV-01207-SAB, 2022 WL 3108619, at *9 (E.D. Cal. Aug. 4, 2022) ("[T]he Court notes the ALJ may accord less weight to medical opinions that do not relate to the claimant's condition during the relevant disability period."). Among other things, the ALJ cited Plaintiff's function report, which noted her ability to shop at stores and get around by using public transportation. (A.R. 334). Additionally, the ALJ cited various medical records noting that Plaintiff was doing well on medication and containing normal examination findings. (*See, e.g.*, A.R. 955 ("She reported being stable on current meds. She is receiving counseling and reported benefit from it."); 980, 995 (noting that Plaintiff was "[o]riented to time, place, person and situation" and her "mood and affect" were appropriate).

Moreover, it is worth noting that LPC Gordon's was just one of the multiple medical opinions that the ALJ reviewed for purposes of determining whether Plaintiff was disabled. Notably, the ALJ found persuasive the opinions of three state agency consultants who assessed

---

[1] As the Ninth Circuit also noted, "The revised regulations recognize that a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion. *See id.* § 404.1520c(c)(3). Thus, an ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records. *Id.* § 404.1520c(c)(3)(i)–(v). However, the ALJ no longer needs to make specific findings regarding these relationship factors." *Woods*, 32 F.4th at 792 (citing § 404.1520c(b)(2)). "A discussion of relationship factors may be appropriate when 'two or more medical opinions . . . about the same issue are . . . equally well-supported . . . and consistent with the record . . . but are not exactly the same.' *Id.* § 404.1520c(b)(3). In that case, the ALJ 'will articulate how [the agency] considered the other most persuasive factors.'" *Id.* Here, there is no argument that the opinion at issue was found to be equally well-supported and consistent with the record as another but not exactly the same.

1 | limitations mostly consistent with those contained in the RFC. (ECF No. 127-28, citing Exhibits
2 | B1A/8-10, B2A/11-13, B4A/11-13).

3 |     After viewing the ALJ's reasoning in light of the record as a whole, the Court concludes
4 | that the ALJ's decision to discount LPC Gordon's opinion was supported by substantial evidence
5 | after consideration of the supportability and consistency factors.

## II. CONCLUSION AND ORDER

    Based on the above reasons, the decision of the Commissioner of Social Security is affirmed. And the Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

    Dated: **January 6, 2023**          /s/ Erica P. Grosjean
                                                  UNITED STATES MAGISTRATE JUDGE